The next case is Untreiner v. Pernikof. We have Ms. Howe for the opponent, and Mr. Babler, is it Babler? Yes. For the athlete. Ms. Howe, you are ready? I am. You are. May it please the court. Plaintiffs have the burden of proof to assert that the court has in person jurisdiction in this match. And I believe that the plaintiff needs to do so by preponderance of the evidence. As you will see in Dillian v. Sergio, Finnegan, and Campbell v. Mills. The trial court continually erred in oral arguments, and even as documented by their court order, that the defendants had the burden of proof showing that personal jurisdiction did not exist in this matter. Even if the plaintiff's burden of proof is only a prima facie basis, the plaintiff has still failed to do this. The plaintiff has failed to provide sufficient evidence to support jurisdiction as is required by the case law, specifically Rogers v. Furlow. I would like to briefly go over the facts of this matter. Defendants were served in Missouri. Defendants are not licensed to practice medicine in Illinois, and were not licensed at the time of the alleged occurrences. Defendants do not advertise their services in Illinois. Dr. Pernikoff is a resident of Missouri. He is not a resident of Illinois and has never been a resident of Illinois. His corporation is in Missouri and has always been in Missouri. He does not own or lease any real or personal property in Illinois. The plaintiff sought out defendant's care and treatment. Defendants did not seek out the plaintiff in any matter whatsoever. All the treatment, monitoring, and testing of the plaintiff in this case and in the care and treatment of her was provided by the defendants in Missouri and not in Illinois. The allegations which plaintiff claims give rise to in person and jurisdiction in this matter is that on September 4th, 2008, Dr. Pernikoff's nursing staff allegedly called the plaintiff. Even though plaintiff's complaint suggests that inadequate and negligent advice was given during that phone call, we know that's inaccurate for the plaintiff's briefs and affidavits. The alleged negligent advice allegedly occurred when the plaintiff called the defendant's office in Missouri. The plaintiff had gone to the defendant's office on that date on September 4th, 2008. It is very important to note that Dr. Pernikoff and his office never billed the plaintiff for this alleged telephone call. Dr. Pernikoff and his office do not have minimum contacts with Illinois. In addition, it would be extremely unreasonable for them to have to defend this lawsuit in Illinois when plaintiffs sought out the defendant's medical services in Missouri and the treatment provided to the plaintiff was in Missouri. Illinois has no personal jurisdiction over defendants pursuant to 735-ILCS-52301 and 735-ILCS-52209. The only allegation that plaintiffs allege provide Illinois with personal jurisdiction over these defendants is this return telephone call that plaintiff placed to defendant on September 4th, 2008. They were in Missouri. The defendants allegedly informed plaintiff that her INR levels were low as measured in Missouri. Those levels were measured in Missouri, not Illinois. And to increase her warfarin, which she was previously prescribed in Missouri and had been given it in Missouri and monitored in Missouri for years. The plaintiff had been on warfarin for years, which was prescribed to the plaintiff in Missouri. The plaintiff suggests that the only portion of the Illinois law statute that would provide Illinois with jurisdiction is 735-ILCS-52209c. Plaintiffs believe that the only part of the statute that is necessary to impart jurisdiction over defendants in Illinois is that they have minimum contacts. They ignore the fact that even if defendants had minimum contacts in Illinois, which they do not, but even if they did, the court also needs to determine whether it would be unreasonable to import personal jurisdiction over defendants in Illinois. Due process is only satisfied when 1. the non-resident has minimum contacts with Illinois, such that defendants have fair warning that they may be required to defend a suit in Illinois, and 2. the action arose out of or relates to defendants' contacts with Illinois, and 3. it is reasonable to require the defendants to litigate in Illinois. Now, see Burger King v. Rosewoods. I can't pronounce that very well. The fair warning requirement is that only if defendants purposely avail themselves of the privilege of conducting activities within the foreign state, Illinois, thus invoking the benefits and protections of its laws. See Hansen v. Dunclop. The defendants cannot be hailed into court and performed solely as a result of random, fortuitous, or attenuated contacts with the foreign or the unilateral acts of a consumer or some other third person. As is here, the quality and nature of the alleged interstate transaction via a telephone call was random, fortuitous, and attenuated, and therefore, it cannot be fairly said that defendants should reasonably anticipate being hailed into court in Illinois. Any alleged contacts must be because defendants created a substantial connection with Illinois, and that does not exist here. See Brokaw v. Anderson and Burger King. One telephone call a plaintiff made to defendants in Illinois is random, fortuitous, and attenuated, and it does not create a substantial connection with Illinois. Foreseeability of being hailed into court in Illinois is also an important consideration in determining whether defendants have minimum contacts, and defendants have no foreseeability of being hailed into Illinois based on one phone call. The facts of cases are very important in determining whether there is personal jurisdiction. It isn't just a matter of looking at one case or as and saying that, oh, that's what the rule is, because the facts are not the same. See Muffo v. Forsythe, Burger King, and Ballard v. Friday-Rollins. Communications that are merely ministerial acts, such as the phone call in this case, are not sufficient to provide personal jurisdiction over a defendant, such as one phone call. The plaintiff alleges that during the phone call, her prescription was amended. That alleged amendment was out of convenience to the plaintiff. The information provided to the plaintiff was done as an accommodation in follow-up versus making the plaintiff come back to the office in order to inform her of her warfarin levels. As the court in Rogers said, defendants treat people, not states, and therefore they are not invoking the protection of the laws of Illinois by treating residents of Illinois exclusively in Minnesota or, as here, exclusively in Missouri. The plaintiff was the motivating force for the relationship between defendant and plaintiff. It is not unreasonable to require a plaintiff to return to Missouri to prosecute any action arising out of that treatment she sought in Missouri. See Muffo v. Forsythe. Use of mails or telephone calls does not amount to purposeful activity invoking the benefits and protections of the state or on the receiving end the plaintiff's form state of such communication. See Campbell v. Gasper. As in Harvey v. Price, defendants do not practice in Illinois. The only contact with Illinois is an alleged telephone call where a plaintiff called a defendant's office. Therefore, as the court in Harvey concluded, defendants do not have the necessary minimum context. When one seeks out services which are personal in nature, such as those rendered by attorneys or physicians, and they travel to the locality where they know the services will actually be rendered, then she must realize that the services are not directed to impact on any particular place but are directed to the needy person themselves. See Sabatos, Gellinan, Vance, and Yates. Medical services should not be prescribed by doctors' concerns as to where the patient may carry all the consequences of his treatment. The traveling public would be ill-served or treatment of local doctors confined to so much aspirin as would get that patient into another state. See Wright v. Yackley. The Brokaw case, while it is not an Illinois case, I think it is very important to look at that case because it's similar to this case and the facts are very important. In Brokaw, the plaintiff alleged, as here, that the defendant prescribed a new order. The court held, as this court should hold, that the contexts are more in the nature of continuing the follow-up and treatment that the contexts were fortuitous and attenuated. As this case and many other cases rule, failure to do something such as having a patient come to the office by its very nature shows the party did not have contacts with the foreign state. Telephone calls in correspondence with the plaintiff in Illinois are not sufficient contacts with Illinois to satisfy due process requirements. See Bond v. Messerman, Cronin v. Science Medical Center, and Valleywide Health Services v. Grant. Follow-up care, as is alleged here, without any evidence that defendants reach into Illinois in order to attract plaintiff's business, does not constitute purposeful availment, which is required by due process analysis. See Cronin. Not only must the defendant have minimum contacts with Illinois, which they do not, but the laws within Illinois must also not offend traditional notions of fair play and substantial justice. See Stabenow v. The Fourteenth Amendment and Burger King. The defendants did nothing to invoke the benefits and protections of Illinois law. It was the unilateral activity of the plaintiff in seeking and obtaining medical services outside of Illinois. That led to the acts of which the plaintiff complains. Therefore, defendants are not amenable to jurisdiction of Illinois courts. Per Burger King, the court may calculate the burden on the defendant. Illinois' interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, interstate judicial system's interest in obtaining the most sufficient resolution, and the shared interest of the several states in furthering fundamental substantial social policies. Plaintiffs cannot say that Illinois is the only convenient and effective forum, especially since she's hired two Missouri attorneys, and she's even filed a separate suit for injuries alleged to have occurred after these defendants and treatment against two St. Louis hospitals, and the lawsuit is filed in St. Louis City, Missouri. The most efficient resolution, as suggested in Harvey, would be to have the lawsuit combined with the lawsuit that is pending in St. Louis City. While the facts may be different, the damages and causation are the same and should be argued in the same lawsuit, and that was filed in Missouri. So the plaintiff would not be prejudiced. A doctor who provides primary treatment to a non-resident in his home state and follow-up advice to the patient in her home state cannot be sued in the patient's home state. See Vance. To hold otherwise would be unfair to defendants. Per Lemke v. St. Margaret Hospital, while easy access to courts may serve to disturb some shoddy medical treatment and maintain quality of care rendered to Illinois residents, the need for Illinois residents to have access to the best available medical care regardless of state lines is most important and outweighs any concern of shoddy medical care. To hold otherwise would have a chilling effect on the willingness of out-of-state doctors to treat Illinois patients. A single telephone call between a physician and his patient does not comport with due process requirements. See Greenberg v. Miami Children's Hospital Research Institute. It would be unreasonable and violate due process if this court said Illinois had jurisdiction over defendants. Otherwise, a physician would need an Illinois medical license. Even at the hearing in the trial court, the plaintiff's attorney acknowledged that the defendants were not practicing without a proper medical license. But in essence, that's what they're saying that the defendants did in the plaintiff's briefs. What if a patient is vacationing in Texas and calls the physician or anywhere? There's cell phones, there's email. Physicians can't use telephones and email all the time with their patients. Should a physician ask every patient where they are located before they talk to them on the phone? That is the potential implication of jurisdiction and if that's found over these defendants in Illinois. It would be fundamentally unfair to require this defendant to defend a lawsuit in Illinois. If this court holds otherwise, physicians will never speak to their patients on the phone, they will never email their patients, for fear of having to defend a lawsuit in a jurisdiction from where the party may be calling them. Further, in this case, Illinois does not have interest in regulating this incidental one-time contact between the physician and the patient. The alleged phone call in the instant case was reflective of and part of the earlier treatment and prescription that the plaintiff had been receiving for a long time. The defendants did not purposely avail themselves of the privilege of conducting activities within the forum state, Seawright v. Yackley. The defendants did not solicit the plaintiff as a patient, but rather the plaintiff voluntarily sought his professional services in Missouri. The plaintiff initiated a relationship with defendants and defendants did not provide a new medicine or diagnosis. The plaintiff was already on morphine. The defendants did not have minimum contacts with Illinois, such that they had fair warning that they may be required to defend a lawsuit in Illinois. It is not reasonable to require defendants to litigate in the forum state of Illinois because Illinois lacks personal jurisdiction over these defendants. Briefly, I was going to do this in my archive, but I see I have time. I do want to kind of go over some of the cases, the three cases that have been mentioned by the plaintiff. First off, any act Dr. Kernikoff or his office performed was in Missouri. The plaintiff's residence is irrelevant and incidental to the services rendered by her physicians. C. Prince v. Ervin. A physician prescribes treatment to a person and not a place. C. Rogers v. Berla. Again, I think it's very important to emphasize that all these cases, no matter what jurisdiction they're from, all say that the facts of the case are very important, and that is why I went through every case that mentioned jurisdiction and a telephone call in order to be, you know, conclusive and make sure I had all the cases so I could compare the facts of the cases. In Orens v. Kennedy, that case is absolutely not analogous to the facts of this case. The parties in Orens conversed many times while performing their fiduciary duties to the estate and the estate's executor. Orens is not a medical malpractice case, as is the instant case, and the physician's services, as many of the cases say, are unique and very different from many other types of cases. Let me ask you a question. Yes, sure. Your opponent cites Orens, Culligan, and Klomp, and I assume you're going to tell me that all of those were more than one contact. Is that correct? That's part of the fact. I mean, that is definitely part of it. Is there any case where one call or return call was sufficient to establish jurisdiction? I don't believe so. You found no case? No case. I found no case that there was one phone call. The case that I thought that was the most analogous was the Brokaw case only because it was a phone call regarding a new order or prescription. So I thought that those facts were the most analogous, and they said that that was not enough. And, in fact, I think that was actually ordering physical therapy, which is different than this case because this case, she was already on warfarin. The only allegation is that he increased the warfarin or his office increased the warfarin. That's my next question. Sure. What was the purpose of the call? What was the purpose of the nurse calling? And did they discover that they had given a bad prescription or that they thought it was time to increase it? What was the evidence? Based on my understanding is that the plaintiff was at the office on that September 4, 2008. Every time she came in, they tested her INR levels to make sure that they were in the correct spot. So they called and left a message allegedly saying that, call us back. They didn't give any negligent advice, and then she called back, and they said that her INR levels were low, increase your warfarin is the allegation. So when they made the call to her, they didn't say, we want to increase your medication. No. Just click Mrs. Doctors, so-and-so's office, please call us back. Right. That's it. And there's no evidence that they even knew, I mean, even if they, I don't think there's evidence that they knew for sure that she was an Illinois resident, although, okay, theoretically, if they called, they would have seen the 618. But there's no evidence. There's cell phones now and everything. So there's no evidence that she wasn't calling from Missouri. She could have been in Missouri. I mean, she says that she was at home, but I'm just saying that there's no reason that they should have known that she was at home calling. She could have been in her cell phone in Missouri calling. In ORAS, also, again, the physician's services are unique and not like other services. C. Gellman, Savage, Yates, Linkey, and Vance. The ORAS bills were sent for the telephone calls. That, I think, is a very important issue. A lot of the cases that do hold jurisdiction, say because the person that's in the other state received a financial benefit and they billed for that service or they got money for that particular service. In this case, there was one phone call and no bill for the service. I will go through the other cases when I come back with my reply. Thank you very much for your time. Thank you, Counsel. You will have an opportunity to forward back. Mr. Dahmer? Please report, Ms. Howell. This is a case involving long-distance medical treatment. Judge Matosian heard, basically, the same things that I'm going to advise the court here and found that the defendant must make a compelling case that jurisdiction was unreasonable in order to decline the plaintiff's choice of form. He also found, given the facts in this case, that there were minimum contacts and that those minimum contacts were the key contacts that were the negligent acts that led to Cheryl Unreiner's stroke in this case. How many contacts were there? The relation to Illinois is such that the defendant, that is, Dr. Pernickoff, was a Missouri resident, but he was actually licensed to practice in Illinois from 2001 until 2005. So it's not like he never availed himself of the laws of the state of Illinois. That's not relevant, is it? I think that it is when looking at minimum contacts with a foreign state. Now, is it the biggest part of this case? No. My question was, how many contacts did he make with her in Illinois? For purposes of this appeal, there were two. Their contact to her and his contact, their reach out to her in Illinois and then her call back to them. Now, let me tell you, Your Honor, why this contact is so low. She had had an aortic, and this is all in the, it is part of the record, it's both in her affidavit and it's in the plaintiff's complaint. She had an aortic valve transplant many years before this event. That makes her very susceptible to forming a blood clot because of this foreign valve in the heart. As a result, they put her on Coumadin therapy, which is to thin the blood. Coumadin, unlike a lot of other drugs like aspirin, really has to be regulated, and it can vary widely, and if the Coumadin levels in the blood, they're called the INR levels, fall too low, then it's sub-therapeutic. That Coumadin is doing no good whatsoever to prevent a blood clot. The chances of somebody with an aortic valve transplant having a blood clot or suffering a stroke are tenfold over somebody that doesn't without Coumadin therapy. So that's why they have to monitor every month once they get to a level of Coumadin in their blood. Now, in this particular case, Cheryl Unreiner went to the doctor 9408, and her blood was taken and it was sent to Smith-Klein, or Quest, I should say, who a couple days later reported to the doctor, hey, this is sub-therapeutic, and it was in fact very sub-therapeutic at that time. Now, what the doctor should have done at that point, and what the standard of care requires, is you bring the patient in and you test their blood again, and you adjust their Coumadin levels, and then you titrate that every week, bringing them in, taking their levels, until you get it right, because it's that important. Instead, what they did was decided to have a long-distance negligent medical care and just called her and said, okay, increase your Coumadin levels. Didn't bring her in, didn't retest her blood, didn't call her in every week. There was a part that Ms. Howe didn't mention, and these are errors of omission. When they called, you just indicated they told her to increase her levels. In your brief, you've got they called and left a message to call right away. That's correct, yes. So they didn't give any prescription over the phone when they called or give her any legal advice, medical advice when they called? Initially, when Vicki at Pernikoff's office called Cheryl, she said, she left a message on the answering machine, your INR values are low. You've got to call the office right away. She gets home, hears the message, and she calls their office right away. Then they prescribe the long-distance medical care, and much of their error is of omission. Instead of bringing her in, in Missouri, retesting her blood in Missouri, telling her, look, you've got to come in every week in Missouri so that we can do this and make sure you get this right. Instead, they say, well, just increase your dosage. We're going to assume that's going to work and then come in in a month. Well, four weeks later, she has a stroke. When her blood levels were tested at the time of that stroke, they were even lower, even more sub-therapeutic than they had been a month before. So this one-time claim or phone call that his office initiates to her in Madison County is not, as the defense would say, random, gratuitous, and attenuated. In fact, it was the cause of her stroke. It was, you know, they didn't give her the advice needed. They didn't bring her into the office every week. They just randomly picked an increased dosage, hoping that it is going to work. Now, when I filed this claim in Illinois, I was very well aware of the OARS case. And, you know, I would think that the same thing that applies to an attorney would apply to a medical doctor. That being, in OARS, you know, a lawyer from Texas, not a contiguous county like we have here. Is that irrelevant, a contiguous county to anything? Well, yes, I think it is. Because I'm sure he's, you know, he is, you know, for personal jurisdiction, it's probably not relevant, you know, when it comes to issues of convenience and things like that, which are not yet before the court. What about the case, FUFFO, F-U-F-F-O? The livestock case here, did you look at it at all? F-U-F-F-O? F-U-F-F-O. Is that an Illinois case? 1981. MUFFLE? Oh, MUFFLE. Yes. In that case, the treatment of the Illinois plaintiff was entirely in another state. Just as in the Venega case. And, you know, something else that we have here, that one of these cases, I think it was, the Ballard case that was cited by the defense, said that, oh, this doctor was calling in prescriptions. Well, this doctor was also calling in prescriptions for Cheryl Einreiner, who was filling those prescriptions in Illinois. You know, that's a small part of this, and that alone wouldn't get us here. But, you know, the main thing is, the particular negligence here, whether it's a one-time contact or a two-time contact, which was initiated by the doctor's office, was the negligent contact. That was the thing, and the last contact that she had at that office before her stroke, four weeks later. And that was the thing, which I would argue to a jury someday, that caused this stroke. And she is extremely brain damaged. So, this, you know, the divorce case found that this statement by this lawyer over the telephone in Missouri saying to an executor to sell stock at that time was enough to have, to say, okay, you know, there are minimum contacts here. Did the actual divorce involve one contact only or a return contact? Was it numerous contacts? I will presume, just as there are numerous contacts in this case with an Illinois resident. Well, there are, you know, Cheryl Einreiner is an Illinois resident, and there are numerous contacts with her because she's her, she's his patient. You know, they do discuss in Orr's that there is an ongoing relationship with this executor and this lawyer in Texas. But the negligent act was a phone call where they said, look, you know, sell this stock, and that was enough. And under the three-part test in International Shoe, you know, there has to be minimum contacts with the foreign state, which I think there's no question that there is here. And secondly, did the action arise from or relate to the context of the forum? Well, it is the fault of that particular contact that led to her stroke. And whether it's reasonable to require the defendant to litigate in this forum, you know, this is where, to answer your question about the contiguous county, I think it does relate to whether it's reasonable. This is, you know, it's no further for him to drive here than for her to drive there. He was formerly licensed in this state. It's certainly not a stretch like it would be if we're talking about a doctor in Alaska to come and litigate this case across, you know, the state line in a contiguous county. Is it your burden to establish jurisdiction, or is it the defendant's burden to establish that there was not jurisdiction? Well, I certainly make the allegations in the complaint that set up my prima facie allegations of jurisdiction. Once they question jurisdiction, you know, I personally have never assumed that I don't have to prove that jurisdiction is proper. And, you know, I've always assumed that I have to state, as I did in the complaint, that there was negligence in this phone call to Madison County, and I proved that by affidavit. So, you know, whether it's my burden to prove that initially or to respond to that, I've proved it. And once it's proven, then there really has to be a compelling reason for the court to not accept the plaintiff's choice of jurisdiction. Do you agree with the defendant's statement that the trial court said it's your burden, defendant, to prove that this court does not have jurisdiction? No, I don't. What did they? I don't agree with that. You don't agree? I, you know, that was stated initially, and it wasn't this argument that's not on the record. And it's been a while now since I heard the argument. When it was stated initially, I thought, man, you know, I don't remember that. And I don't think that the court made that statement. The court did say that he wanted in the order that the plaintiff's choice of jurisdiction should be given weight and the defendant must make a compelling case that jurisdiction is unreasonable to decline jurisdiction, and that's put in the order, and that's straight from the Orr's case. So, you know, the court did say that. Now, I don't, you know, perhaps defense counsel determined that that was the same as saying that it's the defendant's burden. You know, I don't know. But he did put that in the order, and I just don't recall the court saying that. Something they say in their brief, which I agree with, that only in the case of where the manifest way to the evidence favors reversal here does this matter get reversed. And, you know, in this case, all three prongs of international shoe are satisfied. There was, you know, the minimum context, not only related to the evidence or to the negligence that's pled, it is the negligence that's pled. It's more than just, oh, they upped the prescription, because the evidence will be that he had a duty to do a lot more. So there are errors of omission. And instead of bringing her in and doing the things that he needed to do, and, yes, they're right. He never charged her for this. You know, I think that supports us. I mean, it was pretty much offhanded medical treatment that led to her stroke, and he didn't do those things in Missouri that he was required to do. And instead, he picks up the phone very simply and tries to prescribe medication and do medicine long distance, which, you know, let's face it, Your Honor, she talks about, oh, what will happen? Well, if a child has meningitis, they pick up the phone and they tell the doctor the symptoms. The doctor or the doctor calls them first and says, well, get back to me. They call them back across state lines, and the doctor, based upon the symptoms, without seeing the patient, negligently, you know, prescribes something, and the child has a catastrophic event. Basically, that's what happened here. Yes, that is them wrongly practicing medicine long distance over the phone, and that should give rise to jurisdiction in this case and in that case. Now, I did want to mention that they had talked about a second case that was filed in the city of St. Louis against Barnes Hospital. She went on to have a further stroke the next day, which we allege wasn't properly treated. That case is dismissed in the city of St. Louis, so there is not a currently pending case in another state. I guess she wouldn't know that necessarily, but at the time that her brief was filed, it was pending. It has since been dismissed. So that's not there, and that was a separate issue from this. And, Your Honor, as I said, I was well aware of this Orr's case when this matter was filed. I think this is on all fours, albeit contacts a little closer, and this being the last contact that led to the stroke, I think it is absolutely clear whether there's one call, two calls, or three calls here. This was the negligent act, and for that reason, I think Judge Matossian realized that. He recognized that jurisdiction was proper here, and I'm asking this Court to do the same. Don't you think the facts in Muffo are a little closer than the facts in Orr's? Muffo was the doctor who calls the prescription into an Illinois pharmacy. No, Judge, for a couple of reasons. And this Court in Muffo said that was not enough to establish jurisdiction. I understand. And we do have that situation here also, in that she's filling all her prescriptions based upon the doctor calling in the prescription here in Illinois. That's not the basis of our allegations of fault here. Our allegations are that instead of bringing her in, he decides to call her in. Apparently, he doesn't even do it himself. He has his surrogates do it. So not only are we prescribing this treatment and making decisions long distance, but we're doing it through a third party instead of doing the right thing. So we're not here saying, oh, they should have upped the Coumadin to 1.5 instead of 1.25. The fact is, Your Honor, they needed to bring her in and counsel her and bring her in every week until that level gets titrated. Thank you, Counsel. Ms. Howell? Mr. Bowman? Your Honor, I'd first like to point out that the trial court did commit absolute error. And their order specifically says, first, that the plaintiff's choice of jurisdiction should be given weight, which is inaccurate according to Illinois law or anybody's law. In addition, it says that the defendant does not present a compelling case that jurisdiction is unreasonable. For the cases I cited earlier and in my brief, it is the plaintiff's burden of proof, and I believe it's by preponderance of the evidence, although there are cases that say a prima facie case. Well, that language is in the Orr's case. Pardon me? That language is in the Orr's case. Right. I understand that that language is in it, but they still need to prove by preponderance of the evidence, one, that there's minimum context, two, that it wouldn't be unreasonable. They still have to prove that, and then it goes to defendants preparing a compelling case. But the court, in oral argument, which I understand is not on the record, and in the court's order the way I read it, specifically put the burden on defendants, which is improper. Also, the plaintiff now is talking about this failure to bring in the patient and that's an error of omission. The case law in Illinois and elsewhere says that a failure to do something proves there's no minimum context with Illinois. So his argument about this error of omission is proof in and of itself that defendants have no minimum context with Illinois. Okay. They talked about making allegations in their complaint that sets out jurisdiction. I disagree with that. They might have alleged that there was a phone call, which I think is different than what they've said in their briefs in their complaint, but their complaint never says Illinois has jurisdiction because. I mean, there's nothing in their complaint that talks about jurisdiction, so I disagree with that. Again, I don't think that the plaintiff has done in their briefs or here in court shown how any of the cases, which there's probably 50 of them that I have listed, are different or not applicable in this situation. Going back to the plaintiff's cases, again, I think the bills are a very important point. In Orez and in all the other cases, if there's the way they hold jurisdiction, they specifically said it's because the defendant billed for the service. Here, that is not the case. In addition, in Orez, there were numerous telephone calls and letters into Illinois from the defendant. In the instant case, there's only one alleged phone call, and the alleged treatment, which is necessary, the negligent advice has to have occurred during the phone call. It's just one phone call. Let's just say that that's the bill, which I completely disagree with. The plaintiff is the one that called Missouri, not the other way around, when that alleged negligent advice was given. The plaintiffs rely also, although they didn't talk about it, on Culligan International versus Ross and Sims, and I believe that as well is misplaced. In Kellegren, I don't think that the brief of the plaintiff is accurate. The court held jurisdiction was established in Illinois, not only because of numerous letters and phone calls, but also because the law firm traveled to Illinois to discuss the representation. So they actually came into Illinois and met with these clients and discussed the representation, along with numerous phone calls and letters. That is completely different than the situation we have here. Neither Dr. Kornikoff nor any members of his staff ever saw plaintiff in Illinois and never treated her in Illinois. His treatment was performed exclusively in Missouri. He never went to the plaintiff's home to treat her. In Culligan, the court also pointed out that the attorney derived financial benefit from his activities. Dr. Kornikoff, again, did not derive any financial benefit. The Klump case is also easily distinguished. In Klump, a North Carolina attorney was hired by an Illinois resident to handle an Illinois lawsuit. I mean, that's just clear. They're representing an Illinois client to handle an Illinois lawsuit. And they talked to the person. They frequent telephone and frequent written contacts with the client, the treating physicians, and insurance carriers, all in Illinois, and that is different than the case here. All the employees and Dr. Kornikoff and witnesses that may be used in this case, other than maybe the plaintiff, are all in Missouri and not in Illinois. And that, I think, is another important thing, that plaintiff talks about convenience of location and the personal decision on where to try the matter is enough to establish personal jurisdiction. But that is not true. See Ballard v. Freddie Rawlins. The plaintiff has not had any problem driving to the defendant's office in Missouri, and therefore she will also not have a problem when they drive to appear before her. Plaintiffs continually state that treatment providers show untrained or occurred in Illinois, but that is incorrect. Dr. Kornikoff, thank you. I just hope that you dismiss it because I believe there's no jurisdiction. Thank you. Thank you, counsel, for your arguments and your briefs. We will take the matter under advisement. Thank you.